*Not for Publication*

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re **RICHARD T. SHEEHAN**, Debtor. | Case No. **20-20054-BPH** |
| **SHELLI FRAZIER**, Plaintiff. -vs- **RICHARD T. SHEEHAN**, Defendant. | Adv. No. **20-02005-BPH** |

### MEMORANDUM OF DECISION

Plaintiff Shelli Frazier filed a complaint commencing this Adversary Proceeding on May 19, 2020.[1] Plaintiff's Complaint sought to except damages arising from litigation in the Sanders County District Court ("State Court") from Debtor/Defendant Richard Sheehan's ("Debtor") discharge. The Complaint sought a determination that the debts owed to Plaintiff arising from the litigation in State Court were non-dischargeable under § 523(a)(6).[2]

---

[1] ECF No. 1. References to "ECF Nos." refer to the docket in this adversary case. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.
[2] ECF No. 15.

1

The Court conducted a trial on November 18, 2020. Appearances were made on the record. Plaintiff, Debtor, Justin Martin, and Rich Jennison offered witness testimony. Plaintiff's exhibits 1, 3, 4, 5, 8, 15A, and 15B were admitted without objection. Plaintiff's exhibit 9 was admitted over Defendant's objection. Based on the record developed before this Court, the following constitute findings of fact and conclusions of law to the extent required by Rules 7052 and 9014.

## JURISDICTION[3]

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b). This is a core proceeding to determine dischargeability of a particular debt under 28 U.S.C. § 157(b)(2)(I).

## BACKGROUND

The issues litigated in this adversary proceeding stem from the long and tumultuous history these parties share. As is often the case with histories such as theirs, this Court is not the first forum where the parties have encountered each other. It comes as no surprise, then, that the various state court filings admitted as exhibits provide an exhaustive recitation of the parties' history and facts relevant to this action. The Court will not recite the parties' lengthy history of acrimony. Instead, its discussion will focus solely on the facts relevant to resolving this matter.

**I.  State Court Proceedings**.

Plaintiff is the former daughter-in-law of Debtor. Plaintiff and Debtor's son, Mark Sheehan, divorced in 2016. Sometime in 2004, prior to Plaintiff's divorce, Debtor and his wife quitclaimed their interest in property located in Sanders County, Montana ("Property"), to

---

[3] The parties each consented to this Court exercising jurisdiction over this adversary proceeding at ECF Nos. 13 and 14.

2

Plaintiff.[4] Eleven years later, Debtor filed a complaint in State Court alleging that Plaintiff owed Debtor money and had a duty to re-convey title to the Property back to Debtor ("Quiet Title Action").[5] In 2017, the Quiet Title Action came before the State Court for a final hearing.[6] Prior to the hearing, the parties jointly decided to settle the matter. Plaintiff's counsel drafted a Judgment Quieting Title in favor of Plaintiff that was approved and adopted by the State Court on November 3, 2017 ("2017 Judgment").[7]

Among other things, the 2017 Judgment quieted title to the Property in the names of Plaintiff and her daughter and granted them each an undivided ½ interest while allowing Debtor to retain a life estate interest in a designated portion of the Property.[8] Additionally, it directed Debtor to remove his items of personal property that had accumulated on the area of the Property outside his life estate by June 1, 2018.[9] Any personal property left on the non-life estate portion of the Property would be deemed abandoned and become property of Plaintiff.[10] Each party was responsible for attorney fees and costs associated with the 2017 Judgment.[11]

The parties returned to the State Court less than a year later. The State Court held a hearing on its Order to Show Cause why Plaintiff's Motion to Enforce Judgment Quieting Title should not be granted. At the hearing, the State Court also considered whether it should hold Debtor in contempt for, among other things, failing to "make a good faith effort in removing his

---

[4] ECF No. 1 at 3.
[5] *Id.*
[6] *Id.*
[7] Exhibit 1 to ECF No. 1.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

personal property from the land outside his life estate, while [at the same time] removing property that was not his to remove."[12]

Debtor argued that contempt was unwarranted because he had no duty to remove personal property outside the boundaries of his life estate. Debtor relied on the language in the 2017 Judgment stating that items left behind on the non-life estate portion of the Property would be deemed abandoned and become personal property of Plaintiff.[13] The State Court disagreed. On October 26, 2018, the State Court issued an Order ("2018 Judgment").[14] It determined that despite the language in its 2017 Judgment, Debtor agreed and understood he had a duty to remove all "junk" from the non-life estate portion of the Property and he acknowledged this understanding in response to questions from the State Court in 2017, before the 2017 Judgment was entered.[15] Ultimately, the State Court directed Debtor to remove all personal property from the non-life estate portion of the Property within 30 days of the order and pay all Plaintiff's attorney fees incurred between October 31, 2017 and October 26, 2018.[16] If he failed to remove the personal property within the 30-day window, Debtor would be obligated to reimburse Plaintiff for all costs incurred in removing the personal property up to $10,000.[17]

The parties appeared before the State Court again in early 2020. On January 30, 2020, the State Court entered its Findings of Fact, Conclusions of Law, and Order ("2020 Judgment") on Plaintiff's Motion to Void Life Estate and Establish Damages.[18] The 2020 Judgment made

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] Exhibit 7 to ECF No. 1.

4

findings that Debtor had failed to remove his personal property from the non-life estate portion of the Property and had failed to pay Plaintiff's attorney fees and costs as required by the 2018 Judgment.[19] Additionally, the 2020 Judgment found that Plaintiff had incurred $4,070.00 in costs associated with cleanup on the non-life estate property.[20] The State Court also determined that Debtor breached his duty to protect the life-estate portion of the Property from waste.[21] While preserving Plaintiff's damages incurred up to that point ($4,070 plus attorney fees and costs), the State Court terminated Debtor's life estate "[i]n lieu of further money judgments against [Debtor]."[22]

## II. Debtor's Bankruptcy.

Debtor filed his Chapter 7 bankruptcy petition on February 27, 2020.[23] On June 9, 2020, Plaintiff filed Amended Proof of Claim No. 1 ("Claim 1") and Proof of Claim No. 2 ("Claim 2"). Claim 1 asserted an unsecured debt in the amount of $4,000 arising from the 2020 Judgment.[24] Claim 2 asserted a total debt of $11,294.90, with $10,286 of the total amount secured by a judgment lien on Debtor's real property located in Powell County, Montana. Claim 2 similarly arose out of the litigation in State Court and represents the attorney fee award Plaintiff received.

Plaintiff initiated this adversary proceeding on May 19, 2020.[25] Plaintiff's Complaint asserted that Claims 1 and 2 were not dischargeable in Debtor's bankruptcy under § 523(a)(6).[26]

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] ECF No. 1 in Case No. 20-20054-BPH.
[24] Presumably, the $4,000 amount is associated with the $4,070 award for clean-up costs set forth in the 2020 Judgment.
[25] ECF No. 1 in proceeding.
[26] The prayer for relief mistakenly refers to § 523(a)(2)(A). The Court's pretrial Order reflected the agreement between the parties that the singular cause of action to be tried in the adversary

5

A trial was commenced on November 18, 2020.[27] At the conclusion of the trial, Plaintiff's counsel confirmed for the Court that the accumulated debris Debtor left on the Property formed the basis for Plaintiff's § 523(a)(6) claims. Further, Plaintiff's counsel argued that the attorney fee portion of the 2020 Judgment is nondischargeable because it arises from Debtor's allegedly malicious intent to avoid cleaning the Property in accordance with the 2018 Judgment.

## Issue

The sole issue to be determined in this adversary proceeding is whether the debts underlying Plaintiff's Proof of Claim 1 and 2 (collectively referred to as the "Claims")[28] arise from a willful and malicious injury caused by Debtor and are therefore nondischargeable under § 523(a)(6).

## Analysis

A creditor objecting to the dischargeability of its claim bears the burden of proving, by a preponderance of the evidence, that the debt to be excepted from discharge falls within one of the exceptions to discharge enumerated in § 523(a). *Grogan v. Garner*, 498 U.S. 279, 287 (1991). Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The word "willful" as used in § 523(a)(6) modifies the word "injury." Thus, nondischargeability under § 523(a)(6) "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

---

proceeding is whether the debts arising from the State Court litigation are nondischargeable under § 523(a)(6).

[27] The Court finds it unnecessary to engage in a lengthy recitation of the facts presented at trial in the Background section. Instead, it will reference relevant trial testimony and exhibits where appropriate in the Analysis section.

[28] *See* Claims Register, Proof of Claims 1 and 2.

In the Ninth Circuit, the "willful injury" requirement is satisfied only if "the debtor has a subjective motive to inflict injury or when the debtor believes the injury is substantially certain to result from his own conduct." *Ormsby v. First Am. Title Co. (In re Ormsby)*, 591 F.3d 1199, 1209 (9th Cir. 2010). The willfulness standard requires a Plaintiff to establish that a debtor not only committed a wrongful act but did so "with knowledge that the act is wrongful and will necessarily cause injury." *In re Jerich*, 238 F.3d 1202, 1208 (9th Cir. 2001).

In addition to the willfulness prong, a creditor Plaintiff must also establish that the debtor acted maliciously. To prove that an injury is "malicious," a plaintiff must satisfy four elements: 1) a wrongful act; 2) done intentionally; 3) which necessarily causes injury; and, 4) is done without just cause or excuse. *In re Barboza*, 545 F.3d 702, 706 (9th Cir. 2008).[29] The willful injury must be established before malice can be inferred. *Ormsby*, 591 F.3d at 1209.

The State Court proceedings created two debts in favor of Plaintiff: (1) $4,070.00 in clean-up costs; and (2) attorney fees incurred by Plaintiff in obtaining the 2018 Judgment. Both debts are inextricably tied to Debtor's failure to remove his personal property from the non-life estate portion of the Property. *Rooker-Feldman* bars this Court from questioning the propriety of the State Court's decision to impose those debts.[30] Instead, it may only consider the nature of the debts and whether they are a result of Debtor's willful and malicious conduct under § 523(a)(6).

Both the 2017 and 2018 Judgments directed Debtor to remove his personal property or "junk" from the non-life estate portion of the Property. However, both Judgments also provided

---

[29] For a more in-depth discussion of § 523(a)(6), *see* Jonathon S. Byington, *Debtor Malice*, 79 OHIO ST. L.J., 1023, 1046 (2018).

[30] The *Rooker-Feldman* doctrine prohibits a federal court from exercising subject matter jurisdiction over a de facto appeal of a state court judgment. *See Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003). Accordingly, this Court may not reconsider whether the State Court correctly concluded that Debtor was liable for Plaintiff's clean-up costs and attorney fees.

Debtor with an alternative method of compliance. First, Paragraph 15 of the 2017 Judgment provided that "[Debtor] and his agents have until June 1, 2018, to remove his items of personal property that are currently on the [Property] but outside [Debtor's] life estate." Paragraph 16 of the 2017 Judgment, however, went on to state that "[a]ny personal property items not removed by June 1, 2018, shall be deemed abandoned and the property of [Plaintiff] to dispose of with no further duty to account." This language suggests that Debtor had the option of *either* disposing of all personal property on the non-life estate portion of the Property or abandoning it. If the property was abandoned, the property would become Plaintiff's to do with as she wished.

Indeed, this interpretation of the 2017 Judgment was, at least in part, what led the parties back to the State Court in 2018. The 2018 Judgment states that "[Debtor] argued that he had no duty to remove items, relying on the language in the [2017 Judgment] that stated items left behind were deemed abandoned." The State Court ultimately disagreed with Debtor's interpretation and found that it had specifically questioned Debtor in 2017 as to whether he understood he had to remove all the abandoned "junk" from the non-life estate portion of the Property and that Debtor understood that he did.

Based on this finding, the 2018 Judgment directed Debtor to have all his personal property removed from the non-life estate portion of the Property within 30 days of entry of the 2018 Judgment. However, the 2018 Judgment again provided Debtor with an alternative to actually removing all his personal property. Specifically, it provided that "[i]f [Debtor] does not [remove his personal property], [Plaintiff] may pay to have it removed; all reasonable costs, up to $10,000 shall be a judgment debt" Debtor would owe to Plaintiff. Stated more simply, the 2018 Judgement provided Debtor the choice between removing his personal property from the non-life estate portion of the Property *or* reimbursing Plaintiff for clean-up costs. Debtor's

8

apparent decision to choose the latter appears entirely consistent with the directive provided by the 2018 Judgment.[31]

This conclusion is bolstered by the language used in the 2020 Judgment. The Court found that although Debtor's acquaintances "partially cleaned up the [P]roperty," Debtor ultimately left the Property "leaving substantial cleanup undone." As a result, the Court adopted Plaintiff's calculation of clean-up costs ($4,070.00) and granted a judgment against Debtor for those costs, consistent with the language of the 2018 Judgment. Additionally, the State Court found that Debtor committed "gratuitous waste and damage" on the life estate portion of the Property. Specifically, it determined that Debtor damaged wires and water lines, used heavy equipment forks to damage the septic tank and/or drainage field, and cut down fruit trees. The State Court determined that "the only reasonable conclusion is that he did this out of spite and to harm [Plaintiff's] remainder interest" in the life estate portion of the Property.

The "spiteful" nature of Debtor's gratuitous waste and damage to the life estate portion of the Property closely mirrors the type of willful and malicious conduct § 523(a)(6) contemplates. However, Plaintiff chose not to pursue a money judgment based on the damage to the non-life estate portion of the Property. Instead, she requested that the State Court terminate Debtor's life estate "in order to bring this litigation to a conclusion and to mitigate further damages." The State Court did so, and neither party appealed the 2020 Judgment.[32] As a result, even if this

---

[31] The Court cannot ignore the fact that Plaintiff herself testified at trial that Debtor and several of his acquaintances removed at least some of his personal property from the non-life estate portion of the Property over the course of several days. This further indicates that Debtor did not willfully and maliciously disregard the directive provided in the 2018 Judgment.

[32] The Court recognizes that the appeal deadline was tolled as a result of Debtor's bankruptcy filing. However, it finds it appropriate to note that if Debtor were to appeal the 2020 Judgment at this time, his actions could be deemed a "return to the fray" *See Taggart v. Lorenzen*, 139 S.Ct. 1795 (2019). If Plaintiff was awarded additional post-petition attorney's fees or sanctions, those

Court were to adopt the State Court's findings, of spitefulness, and conclude the damage was willful and malicious, there is no corresponding debt to except from discharge because Plaintiff received a non-monetary award in the form of termination of Debtor's life estate as an alternative to monetary damages. This Court determines that any debt arising from Debtor's damage to the life estate portion of the Property was satisfied as a result of the non-monetary award terminating the life estate in the 2020 Judgment.

Conversely, nothing in the 2017, 2018, or 2020 Judgments supports a finding that Debtor's decision to simply abandon personal property on the non-life estate portion of the Property was willful and malicious. His decision to do so was expressly permitted by both the 2017 and 2018 Judgments. The 2020 Judgment awarded Plaintiff clean-up costs in the amount of $ 4,070.00, in accordance with the 2018 Judgment, based on Debtor's decision to forego the clean-up himself. Since the 2018 Judgment expressly permitted Debtor to make the choice he did, this Court cannot determine that his conduct was even "wrongful," much less intended to cause Plaintiff injury. At a minimum, the language of the 2018 Judgment provides satisfactory "just cause or excuse" for Debtor's actions that preclude this Court from concluding that he acted willfully under § 523(a)(6). Since the "willfulness" prong has not been satisfied, this Court need not analyze the "maliciousness" prong. *See Ormsby*, 591 F.3d at 1209.

Plaintiff's Claims 1 and 2 both relate to Debtor's failure to remove his personal property from the non-life estate portion of the Property. Based on the foregoing, the Court finds that Plaintiff's Claims 1 and 2 were not a result of willful and malicious injury caused by Debtor. The only acts by Debtor that might be construed as willful or malicious involved the damage Debtor

---

amounts may not be subject to Debtor's discharge. *See In re Ybarra*, 424 F.3d 1018, 1022 (9th Cir. 2005). The parties would have to undertake a return to the fray analysis.

committed on the life estate portion of the Property. However, Plaintiff elected non-monetary damages, *i.e.*, the termination of Debtor's life estate, for these acts. Accordingly, Claims 1 and 2 will be discharged at the conclusion of Debtor's Chapter 7 case.

## Conclusion

Plaintiff has not established by a preponderance of the evidence that Debtor's abandonment of his personal property on the non-life estate portion of the Property, the conduct giving rise to her Claims, was willful and malicious under § 523(a)(6). Further, any willful and malicious conduct involving the life estate property resulted in a non-monetary award, *i.e.* termination of Debtor's life estate. As a result, Plaintiff's Claims 1 and 2 will be discharged. Judgment will be entered for Debtor dismissing Plaintiff's Complaint. The Court will prepare the form of judgment.

Dated December 15, 2020.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana